————o———.——

No. 4538.

Court of Appeal, Parish of Orleans.

ERWIN E. HAMMER VS. FRENCH MARKET ICE MANU-
FACTURING COMPANY OF NEW ORLEANS.

Questions of fact only are involved herein.

Appeal from Civil District Court, Division "D."

W. McL. Fayssoux, for Plaintiff and Appellee.

John Dymond, Jr., for Defendant and Appellant.

MOORE, J. On the 12th day of February, 1904, the re-

spective parties to this suit entered into a written agreement by which the services of the plaintiff was engaged as superintending engineer of defendant's ice plant, for a term ending on the 31st day of December, 1904, at a salary of $1,800 per annum, payable in equal monthly installments, beginning on the first day of January, 1904.

In addition to his general duties as superintendent engineer, the plaintiff was "to superintend and manage the contemplated repairs to, improvements of, renovation and reconstruction of the machinery of said ice plant * * * the said repairs, improvements, renovation and construction of said machinery of the said ice plant was not to exceed the price of $3,500, said repairs and improvements to be done after consultation with the executive committee of said French Market Ice Manufacturing Company of New Orleans."

As a compensation to plaintiff for this additional service it is stipulated that the defendant "relinquishes and gives to the party of the first part (plaintiff herein) all the present machinery now in said ice plant which may be cut out, discarded or laid aside, and more particularly the direct connected electric light engine and dynamo, elevator, motor, brine agitator, engines, open-faced water heaters, condensors, condense pan, supports for pan and such other machinery, piping, fittings, valves as may be removed or not used in such repairs, improvements, renovation or reconstruction."

It is further stipulated "that should such repairs, improvements, renovation or reconstruction be begun and from no cause of the party of the first part (plaintiff) not be completed within the period of this contract, said party of the first (part) shall continue the same to their completion."

It appears that the "contemplated repairs" referred to in the contract were to be somewhat on the line of those suggested by plaintiff some eight months previous to the completion of the agreement, supra, and whilst he was in defendant's employ in the capacity of chief engineer."

Those suggestions were not, however, to be carried out in detail. As shown by the excerpt from the contract *supra*, the "repairs and improvements" were to be done and performed by plaintiff "after consultation with the executive committee" of the defendant company. A number of changes from the original suggestion of plaintiff were adopted, and in fact the

committee always deferred to the views and suggestions of plaintiff, in whom the members seemed to have reposed great trust and confidence.

On the 25th of February, 1904, plaintiff began the work of repairing, etc., as stipulated in the contract, and in about five or six months thereafter completed same, apparently to the satisfaction of the defendant's executive committee, which was, after the completion of the work, requested by plaintiff on several occasions to "look over the work," but the members answered that "they didn't know anything at all about machinery; that all they knew or cared about was the result accomplished; that there was no use of their going and looking over the work, since they were getting good results and that that was everything they were after."

It is testified to by plaintiff that subsequent to the completion of the work a formal resolution was adopted by the Board of Directors of the defendant Company tendering thanks to the plaintiff "For the satisfactory manner" in which he had repaired, changed and operated the plant since the changes and alterations were made." The minute book of defendant Company for this date was called for by plaintiff for the purpose of corroborating this statement. The note of evidence, however, does not show that it was ever produced. Two of the directors, when testifying for defendant, and when interrogated with reference to the adoption of this resolution, can only say that they cannot remember whether such a resolution was adopted or not, or even that they were present at the meeting referred to.

During the progress of the work plaintiff, from time to time, and as he was authorized to do under the contract, returned and removed from the plant so much of the machinery as was "cut out," "discarded and laid aside," and when his connection with the defendant ceased, which was about the 18th of November, 1905, and several months after the completion of the work, he was requested by defendant's agents to remove, and did so take and remove, "certain heaters and other stuff" which had been "cut out" and which he was entitled to under the contract.

Subsequently, however, when he sought to remove other portions of the machinery which were "cut out," and to which plaintiff considered himself entitled under the contract, his right to do so was disputed, whereupon the instant suit, which is for

the recovery of this property, was instituted.

For defense the answer avers:

1. That plaintiff never completed the contract.

2. That the articles claimed are not the articles the plaintiff would be entitled to receive under the contract.

3. That some of the machinery claimed was bought by plaintiff for the defendant to be used in the repairs, and that, therefore, they are not to be considered as falling under the

4. That plaintiff had already removed old machinery far in excess of the value at which he had fixed the worth of his services.

5. That he had guaranteed that the total costs of repairs, etc., should not exceed $3,500, whereas the cost amounted to $3,629.42, and

6. That it has cost defendant $1,200 additional to complete the repairs which plaintiff had agreed to make, and which he had left unfinished. Defendant then reconvenes for the sum of $1,329 made up of the items of $129.42 extra costs and the $1,200 alleged to be the subsequent expenditure for the completion of the work.

There was judgment in favor of plaintiff declaring him to be entitled to some few of the many articles claimed and rejecting defendant's reconventional demand.

The defense that plaintiff never completed his work is clearly an afterthought of the company. No machinery declared by the trial judge to belong to the plaintiff under the contract, formed any part or portion of the machinery bought by him for defendant, and to be used in the contemplated work. They are all old machinery "cut out" from the old plant, and not necessary to the work which was undertaken. The value of the machinery which plaintiff was to receive was not an element in the contract. The basis for this defense is a clause appearing in the suggestion which plaintiff had made to the defendant company as its chief engineer on the 11th of September, 1903, wherein he, in making the estimate of cost of such repairs, stated that the cost of such work would be "not more than $3,500," from which would be deducted the "Sale of discarded materials about $500."

That suggestion was not incorporated in the written con-

tract sued on, there was no proposition that plaintiff was to do the work suggested by the letter of September 11, 1903, and more that, he, or any other person undertaking the work, was to receive the old machinery which would be "cut out" as a compensation for his services. In the contract sued on the plaintiff is to get this machinery without regard to its price.

The work performed by plaintiff did cost $129.42 more than the stipulated guarantee, but, the difference was paid without murmur or complaint on the part of defendant, and it is only now, two years afterward, when the answer is filed that this objection is urged ;and finally, as we find that the work contracted for was completed, approved and accepted by the company, the claim of $1,200 "additional to complete the repairs" is without merit.

The judgment appealed from is affirmed.